1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUNPOWER CORPORATION, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> SOLARCITY CORPORATION, A Delaware corporation; TOM LEYDEN, an individual; MATT GIANNINI, an individual; DAN LEARY, an individual; FELIX AGUAYO, an individual; ALICE CATHCART, an individual. <br><br> Defendants. | Case No.: 12-CV-00694-LHK <br><br> ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS |

Before the Court is Defendants SolarCity Corporation, Tom Leyden, Matt Giannini, Dan Leary, Felix Aguayo, and Alice Catchart's ("Defendants") Partial Motion to Dismiss.  *See* ECF No. 47 ("Motion").  Having considered the parties' submissions and the relevant case law, and the parties' arguments at the hearing held on November 8, 2012, the Court GRANTS Defendants' Motion.

## I.    FACTUAL BACKGROUND

SunPower is a leading manufacturer and distributor of high-efficiency solar panels and other related equipment.  Complaint, ECF No. 1 ("Compl.") ¶ 12.  SolarCity is a distributor of solar panels and other related equipment.  *Id.* ¶ 13.  Defendants Tom Leyden, Matt Giannini, Dan Leary, Felix Aguayo, and Alice Cathcart (the "Individual Defendants") were employed by SunPower in

1

sales positions before being recruited by SolarCity. *Id.* ¶¶ 14-19, 38-39.  Each of the Individual Defendants signed agreements at SunPower agreeing not to disclose "confidential or proprietary information" to third parties and to return such information to SunPower upon ending their employment. *Id.* ¶ 25.

On or about December 9, 2011, SunPower discovered that Aguayo had accessed his company email account after he was terminated. *Id.* ¶ 32.  SunPower also discovered that Aguayo had forwarded several emails containing customer information, price lists, and market reports to his personal email address on or about November 18, 2011. *Id.*  Based on the emails Aguayo accessed and the proximity in time to Leyden, Giannini, Leary, Aguayo, and Catchart's departures, SunPower initiated an investigation, including conducting a computer forensic analysis of the computers used by the Individual Defendants. *Id.* ¶ 33.

SunPower's investigation revealed that, shortly before leaving SunPower, each of the Individual Defendants had used various means, including USB devices and portable hard drives, to store SunPower files containing "confidential… and non-confidential proprietary information." *Id.* ¶¶ 34-48.  This information consisted of, *inter alia*, contact information, sales histories, potential new sales, status, market and business analysis, quotes, forecast analysis, cash flow analysis, and project economics. *Id.*  SunPower is informed and believes that this information has been delivered to Defendant SolarCity and that Defendants "continue to use… [the] data… for their own benefit." *Id.* ¶¶ 49-55.

## II.     PROCEDURAL BACKGROUND

As a result of Defendants' actions, on February 13, 2012, SunPower filed the instant action. In this action, SunPower alleges that Defendants misappropriated SunPower's trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.* ("Trade Secrets Claim"). *Id.* ¶¶ 63-72.  In addition to SunPower's Trade Secrets Claim, SunPower alleges several causes of action based on Defendant's misappropriation of what SunPower terms "non-trade secret proprietary information." *Id.* ¶ 121.  These causes of action include SunPower's: (1) fourth cause of action for breach of confidence (*see id.* ¶¶ 118-124), (2) fifth cause of action for conversion (*see id.* ¶¶ 125-130), (3) sixth cause of action for trespass to chattels (*see id.* ¶¶ 131-

2

137), (4) seventh cause of action for tortious interference with prospective economic advantage (*see id.* ¶¶ 138-145); (5) eighth cause of action for common law unfair competition (*see id.* ¶¶ 146-151); and (6) ninth cause of action for unfair competition under California Business & Professions Code section 17200 (*id.* ¶¶ 152-155) (collectively, "Non-Trade Secret Claims").[1]

On August 2, 2012, Defendants filed the instant Motion seeking dismissal of SunPower's Non-Trade Secret Claims. Defendants' primary basis for relief is that the California Uniform Trade Secrets Act supersedes SunPower's Non-Trade Secret Claims. Motion at 1. SunPower filed its Opposition on October 11, 2012. ECF No. 51 ("Opposition"). Defendants filed their Reply on October 18, 2012. ECF No. 52 ("Reply").

## III.    LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988)[2]. While "'detailed factual allegations'" are not required, a complaint must include sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to

---

[1] SunPower also alleges causes of action for: (1) violations of the Computer Fraud and Abuse Act by the Individual Defendants based on Individual Defendants' unauthorized access of SunPower's computer systems (*id.* ¶¶ 56-62); (2) breach of contract based on Individual Defendants' disclosure and use of SunPower's confidential and proprietary information in violation of their agreements with SunPower (*id.* ¶¶ 73-117); and (3) violation of the California Comprehensive Computer Data Access and Fraud Act (*id.* ¶¶ 156-165). These causes of action were not the subject of the Motion. Accordingly, the Court does not address them.

[2] As recognized in *Reed v. Lowe*, *Balisteri* has been overruled "to the extent that it followed the rule that, [a] complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Reed*, No. CV 10–5783, 2012 WL 1460588, at *2 n. 2 (C.D. Cal. Mar. 16, 2012) (internal quotations omitted).

3

United States District Court
For the Northern District of California

SunPower. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements of a cause of action." *Iqbal,* 555 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir.1996); *accord Iqbal,*555 U.S. at 677-80.

## IV.    DISCUSSION

In the instant Motion, Defendants move to dismiss the Non-Trade Secret Claims on the grounds that: (1) California law has never recognized causes of action for conversion, trespass to chattels, tortious interference with prospective economic advantage, common-law unfair competition, or statutory unfair competition based on the misappropriation of "non-trade secret proprietary information"; and (2) even if California law did previously allow such claims, such claims are now superseded[3] by the California Uniform Trade Secrets Act ("CUTSA"). Motion at 2. Defendants also argue that SunPower's seventh cause of action for tortious interference with prospective economic advantage should be dismissed because SunPower has failed to allege that Defendants' conduct interfered with SunPower's relationship with a specific third party. *Id.* at 18-19. The Court addresses the supersession issue first and concludes that SunPower's Non-Trade Secret Claims are superseded.

### A.    CUTSA Supersession

#### 1.    Background on CUTSA and CUTSA Supersession

California's Uniform Trade Secrets Act provides for the civil recovery of "actual loss" or other injury caused by the misappropriation of trade secrets. Cal. Civ. Code § 3426.3. Misappropriation means improper acquisition, or non-consensual disclosure or use of another's trade secret. *Id.* § 3426.1(b). The statute defines a "trade secret" as information that derives

---

[3] Defendants use the term "preempted." As explained in *Silvaco Data Systems v. Intel Corp.*, "[t]he [California] Supreme Court has criticized the use of 'preempt' to describe the supersession of one state law by another… The court therefore adopted the term 'displace.'" 184 Cal. App. 4th 210, 232 n. 14 (2010) (internal quotations and citations omitted), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011). The *Silvaco* Court went on to state that "[f]or present purposes we favor [the term] 'supersede[.]'" *Id.* The Court follows *Silvaco* and uses the term 'supersede' rather than 'preempt.'

4

"independent economic value" from its confidentiality and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id.* § 3426.1(d).

CUTSA includes a savings clause (Section 3426.7) that "preempt[s] claims based on the same nucleus of facts as trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (2009); *see also* Cal. Civ. Code § 3426.7[4]. The savings clause does not affect "contractual remedies" and civil remedies "that are not based upon misappropriation of a trade secret." *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 233 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court,* 51 Cal.4th 310 (2011).  "The preemption inquiry for those causes of action not specifically exempted by § 3426.7(b) focuses on whether other claims are not more than a restatement of the same operative facts supporting trade secret misappropriation. . .  If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Convolve, Inc. v. Compaq Comp. Corp.*, No. 00 CV 5141 (GBD), 2006 WL 839022, at *6 (S.D.N.Y. Mar. 31, 2006) (internal quotations omitted) (applying California law).

Following the nucleus of facts test, a number of Courts, including this Court, have held that CUTSA may supersede various claims including, *inter alia*, claims for conversion, common count, quantum meruit, unjust enrichment, breach of confidence, unfair competition, and intentional and

---

[4] California Civil Code Section 3426.7 provides that:

(a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

(b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

(c) This title does not affect the disclosure of a record by a state or local agency under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code).  Any determination as to whether the disclosure of a record under the California Public Records Act constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this title.

United States District Court
For the Northern District of California

negligent misrepresentation where the wrongdoing alleged in connection with such claims is the misappropriation of trade secrets. *See e.g. Louis v. Nailtiques Cosmetic Corp.*, 423 F. App'x 711, 713 (9th Cir. 2011) ("Louis's common count and quantum meruit claims are preempted by California's Uniform Trade Secrets Act, Cal. Civ.Code § 3426.7." (citing *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 954-55)); *SOAProjects, Inc. v. SCM Microsystems, Inc.*, 10-CV-01773-LHK, 2010 WL 5069832 (N.D. Cal. Dec. 7, 2010) ("SOAProjects' attempt to use unjust enrichment to recover for SCM's alleged misappropriation of SOAProjects' trade secrets likewise fails because it is preempted by the California Uniform Trade Secret Act." (citing *Silvaco*, 184 Cal. App. 4th 236)); *Silvaco*, 184 Cal. App. 4th at 236 (holding that claims for conversion, common count, common law unfair business practices, intentional and negligent misrepresentation were superseded by CUTSA); *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 960 (concluding that plaintiff's breach of confidence claim was superseded because "the conduct at the heart of" both the breach of confidence claim and the UTSA claim was "the asserted disclosure of trade secrets by Tam to respondents"); *id.* at 962 (holding that statutory unfair competition claim was superseded because it "rest[ed] squarely on its factual allegations of trade secret misappropriation").

### 2. CUTSA Can Supersede Claims Based on the Misappropriation of Non-Trade Secret Information

In this case, SunPower does not dispute that the UTSA supersedes common-law claims to the extent such claims "are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." Opposition at 3 (quoting *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 958 (emphasis added)). Rather, SunPower argues that its Non-Trade Secret Claims are not based on the same nucleus of fact as its Trade Secret Claim because the Non-Trade Secret Claims relate to the misappropriation of SunPower's non-trade secret proprietary information, as opposed to the misappropriation of SunPower's trade secrets. *Id.* at 5; *see also id.* (arguing that "[t]his non-trade secret information is separate and apart from the trade secrets that form the basis of SunPower's [UTSA] claim"). Thus, the Court must determine whether a claim based on the misappropriation of non-trade secret proprietary information is superseded by CUTSA.

Case No.: 12-CV-00694-LHK
ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

Only one California Court has explicitly considered this issue, specifically the California Court of Appeal in *Silvaco*.  The *Silvaco* Court held that the UTSA superseded claims for conversion, common count, common law unfair business practices, and intentional and negligent misrepresentation because those claims were based on the misappropriation of trade secrets plaintiff claimed were "contained" in computer software it had developed.  *See* 184 Cal. App. at 236.  In a footnote addressing the Eastern District of Pennsylvania's decision in *Cenveo Corp. v. Slater*, CIV A 06-CV-2632, 2007 WL 527720 (E.D. Pa. Feb. 12, 2007), the *Silvaco* Court stated:

> We emphatically reject the *Cenveo* court's suggestion that the uniform act was not intended to preempt "common law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant."  (*Cenveo*, *supra*, 2007 WL 527720 a p.4)  On the contrary, a prime purpose of the law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using "information ... of value." (See § 3426.8.)  Central to the effort was the act's definition of a trade secret.  (See § 3426.1, subd. (d).) Information that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen.  By permitting the conversion claim to proceed on a contrary rationale, the *Cenveo* court impliedly *created* a new category of intellectual property far beyond the contemplation of the Act, subsuming its definition of "trade secret" and effectively obliterating the uniform system it seeks to generate.

*Silvaco*, 184 Cal. App. 4th at 239 n. 22.

Defendants contend that the *Silvaco* footnote stands for the proposition that, under California law, SunPower's claims based on the misappropriation of *non*-trade secret proprietary information are superseded.  Motion at 11.  The Court agrees that this footnote supports Defendants' argument.  However, the Court notes that an argument could be made that the footnote is dicta as, unlike in the instant case, in *Silvaco*, there does not actually appear to have been any allegation by plaintiff that the information plaintiff was seeking to protect was *not* a trade secret and therefore not subject to trade secret law.  *See* 184 Cal. App. 4th at 239 ("All of [plaintiff's] claims, except its UCL claim… depend on [defendant's] supposed use, in [plaintiff's] words of 'software… which embodies and uses… [plaintiff's] Trade Secrets'"); Opposition at 7 (arguing that "*Silvaco* address[ed] [a] complaint[] in which the additional common law causes of action were explicitly based on the use of trade secrets").

7

Nevertheless, even if the statement in *Silvaco* is technically dicta, given the *Silvaco* Court's "emphatic[]" rejection of SunPower's position, absent "convincing evidence that" the California Supreme Court "would decide [this issue] differently," this Court believes it prudent to follow *Silvaco*. *Cf Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir. 2001))). Here, SunPower has not identified any decision that suggests the California Supreme Court would conclude that CUTSA does not supersede claims based on the misappropriation of confidential or proprietary information that nevertheless fails to qualify as a trade secret under CUTSA.

Moreover, the Court agrees with the rationale in *Silvaco*. In order for the taking of information to constitute wrongdoing, the information must be property. Information is not property unless some "positive law" makes it so. *Silvaco*, 184 Cal. App. 4th at 239 n. 22. Thus, the Court agrees with the *Silvaco* Court that, in order to state a claim based on the taking of information, a plaintiff must show that he has some property right in such information (*i.e.* that the information is proprietary). *See id.* If the basis of the alleged property right is in essence that the information is that it is "not… generally known to the public," (Cal. Civ. Code § 3426.1(d)(1)) then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret. To permit otherwise would allow plaintiffs to avoid the preclusive effect of CUTSA (and thereby plead potentially more favorable common-law claims) by simply failing to allege one of the elements necessary for information to qualify as a trade secret. *Cf Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 986 (C.D. Cal. 2011) ("Allowing civil plaintiffs to nevertheless proceed with such claims on the basis of the theft of confidential information that doesn't meet the statutory definition of a trade secret undermines the California Court of Appeal by 'alternatively plead[ing] claims with less burdensome requirements of proof.'" (quoting *Diamond Power Int'l v. Davidson*, 540 F. Supp. 2d 1322, 1345 (N.D. Cal. 2007)). For example, a Plaintiff seeking to bring a non-CUTSA claim based on the misappropriation of valuable information could avoid supersession under CUTSA by failing

8

to allege that the information was "subject" to "reasonable" efforts "to maintain its secrecy." Cal. Civi. Code § 3426.1(d)(1). Such a result would subvert CUTSA's purpose of providing a "uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information ... of value.'" *Silvaco*, 184 Cal. App. 4th at 239 n. 22; *see also BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, 123 Haw. 314, 327 (2010) ("A common law claim premised on information that fails to qualify as a trade secret would seemingly undercut the statute's primary goal of uniformity, potentially render parties liable for using information that is not secret when the UTSA would not impose liability, and potentially pose Supremacy Clause problems." (quoting Pooley, *Trade Secrets*, § 2.03[6])).

The Court also notes that the holding in *Silvaco* is consistent with the position taken by a number of state Supreme Courts that have held that claims based on the misappropriation of information may be superseded notwithstanding the fact that the information ultimately fails to qualify as a trade secret. *See HDNet v. N. Am. Boxing Council*, 972 N.E.2d 920, 922-926 (Idaho 2012) (following "majority" view in concluding that UTSA preempts claims based on the misappropriation of confidential, proprietary, or otherwise secret information regardless of whether the information ultimately qualifies as a trade secret); *Robbins v. Supermarket Equip. Sales, LLC*, 290 Ga. 462, 465 (2012) ("For the GTSA to maintain its exclusiveness, a plaintiff cannot be allowed to plead a lesser and alternate theory of restitution simply because the information does not qualify as a trade secret under the act."); *BlueEarth*, 123 Haw. at 327 (holding "that the HUTSA preempts non-contract, civil claims based on the improper acquisition, disclosure or use of confidential and/or commercially valuable information that does not rise to the level of a statutorily-defined trade secret"); *Mortgage Specialists, Inc. v. Davey*, 153 N.H. 764, 776 (2006) (rejecting plaintiff's argument and declining "to adopt the position of a minority of courts that have held that common law and statutory claims are not preempted by the UTSA if they involve information that does not meet the statutory definition of a trade secret"); *Dicks v. Jensen*, 172 Vt. 43, 51 (2001) ("Finally, plaintiff argues that even if his customer list does not meet the statutory definition of a trade secret, defendants were under a common law duty not to solicit the Lodge's customers. This argument fails because it is explicitly contravened by the Trade Secrets Act.

9

Case No.: 12-CV-00694-LHK
ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

Section 4607 states 'this chapter displaces conflicting tort, restitutionary, and any other law of this state providing civil remedies for misappropriation of a trade secret.' 9 V.S.A. § 4607.  Thus, the statute plainly bars a common law remedy on this theory").[5]  The Court considers these cases persuasive.

Furthermore, the majority of district courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA.  *See e.g. FormFactor, Inc. v. Micro-Probe, Inc.*, C 10-3095 PJH, 2012 WL 2061520, at *15 (N.D. Cal. June 7, 2012) ("With regard to the breach of confidence claim, CUTSA preempts other claims based on misappropriation of confidential information, regardless of whether the information ultimately meets the statutory definition of a trade secret." (citing *Silvaco*, 184 Cal. App. 4th at 236-40)); *Heller v. Cepia, L.L.C.*, C 11-01146 JSW, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012) ("Therefore, Heller's common law claims against Cepia premised on the wrongful taking and use of confidential business and proprietary information, regardless of whether such information constitutes trade secrets, are superseded by the CUTSA." (citing *Silvaco*, 184 Cal. App. 4th at 236-240)); *Jardin v. Datallegro, Inc.*, 10-CV-2552-IEG WVG, 2011 WL 1375311 (S.D. Cal. Apr. 12, 2011) ("CUTSA preempts all claims based upon the misappropriation of ... confidential information, whether or not that information rises to the level of a trade secret." (internal quotations omitted)); *Mattel, Inc.*, 782 F. Supp. 2d at 987 ("In an effort to align with the California courts that have addressed this issue, the Court concludes that UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." (citing *Silvaco*, 184 Cal. App. 4th at 239 n.22)); *but see Leatt Corp. v. Innovative Safety Tech., LLC*, 09-CV-1301-IEG (POR), 2010 WL 2803947, at *6 n. 5 (S.D. Cal. July 15, 2010) (holding that a "careful reading of the *Silvaco* decision reveals that it does not undermine the conclusion that the UTSA only preempts additional

_____

[5] *But see Burbank Grease Services, LLC v. Sokolowski*, 294 Wis. 2d 274, 298 (holding that the WUTSA does not preempt claims that "do not depend on information that meets the statutory definition of a 'trade secret'"); *but cf Frantz v. Johnson*, 116 Nev. 455, 465 (2000) (noting that "[t]here may be future instances where a plaintiff will be able to assert tort claims... that do not depend on the information at issue being deemed a trade secret, and thus are not precluded by the UTSA")

Case No.: 12-CV-00694-LHK
ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

claims that depend on the misappropriation of a trade secret" and declining to dismiss plaintiff's claims based on "the misappropriation of otherwise confidential or proprietary, but not trade secret, information").

SunPower cites several district court cases reaching a contrary conclusion. *See* Opposition at 4 (citing *PQ Labs, Inc. v. Yang Qi*, C 12-0450 CW, 2012 WL 2061527, at *5 (N.D. Cal. June 7, 2012) ("If a claim is based on confidential information other than a trade secret, as that term is defined in CUTSA, it is not preempted." (quoting *First Advantage Background Services Corp. v. Private Eyes, Inc. ("First Advantage")*, 569 F. Supp. 2d 929, 942 (N.D. Cal. 2008))); *TMX Funding, Inc. v. Impero Technologies, Inc.*, C 10-00202 JF (PVT), 2010 WL 2509979 (N.D. Cal. June 17, 2010) (holding that plaintiff could "continue to pursue [his] [tort claims] so long as the confidential information at the foundation of the claim is not a trade secret, as that term is defined in [the UTSA]." (quoting *First Advantage*, 569 F. Supp. 2d at 942)); *Ali v. Fasteners for Retail, Inc.*, 544 F. Supp. 2d 1064, 1072 (E.D. Cal. 2008) ("[I]t is still unclear how much of the allegedly misappropriated information was a trade secret.  Therefore, it would be premature to hold that CUTSA preempts Plaintiff's conversion claim."); *First Advantage*, 569 F. Supp. 2d at 942 (holding that plaintiff could "continue to pursue the claim for false promise, so long as the confidential information at the foundation of the claim is not a trade secret, as that term is defined in CUTSA."); *Terarecon, Inc. v. Fovia, Inc.*, C 05-4407 CW, 2006 WL 1867734, at *10 (N.D. Cal. July 6, 2006) (holding that conversion claim based on misappropriation of proprietary materials was not superseded because plaintiff "did not incorporate by reference its allegation that its proprietary materials are trade secrets in its proposed claim for conversion"; thus plaintiff's conversion claim was "an alternative theory, which [plaintiff] [was] allowed to plead")); Opposition at 10 (citing *Strayfield Ltd. v. RF Biocidics, Inc.* No. CIV. S-11-2631 LKK/GGH, 2012 WL 170180, at *1 (E.D. Cal. Jan. 19, 2012) (holding that defendants failed to show that "CUTSA preempts common law misappropriation claims and unfair competition claims that pertain to intellectual property other than trade secrets").  The Court is not persuaded by these cases.

As an initial matter, three of the six cases SunPower cites were decided before *Silvaco*.  *See Ali*, 544 F. Supp. 2d at 1072 (decided in 2008); *First Advantage*, 569 F. Supp. 2d at 942 (decided in

11

2008); *Terarecon, Inc.*, 2006 WL 1867734 (decided in 2006).  Furthermore, the three cases cited by SunPower that post-date *Silvaco* (*PQ Labs, Inc.*, *Strayfield*, and *TMX Funding, Inc.*) failed to consider *Silvaco*.  Moreover, two relied on the Northern District of California's decision *First Advantage*, which pre-dates *Silvaco*.  *See PQ Labs, Inc.*, 2012 WL 2061527 at *5 (quoting *First Advantage*, 569 F. Supp. 2d at 942); *TMX Funding, Inc.*, 2010 WL 2509979 at *10 (citing *First Advantage*, 569 F. Supp. 2d at 942).  Accordingly, the Court declines to follow these decisions.  Instead, the Court follows *Silvaco*, *FormFactor*, *Heller*, and *Mattel* in holding that CUTSA supersedes claims based on the misappropriation of information, regardless of whether such information ultimately satisfies the definition of trade secret.

In reaching this conclusion, the Court observes that, while not explicitly addressing the issue of supersession, at least two Ninth Circuit cases have suggested that a plaintiff who fails to show that information constitutes a legally protectable trade secret, may nevertheless prevail on non-trade secret claims based on the misappropriation of the same information.

Specifically, in *Imax Corp. v. Cinema Technologies, Inc.*, the Ninth Circuit concluded that the district court properly dismissed plaintiff's UTSA claim because SunPower failed to identify its purported trade secrets, the "dimension[s] and tolerance[s]" of various components of its projector system, with sufficient particularity.  *Imax,* 152 F.3d 1161, 1167 (9th Cir. 1998).  The Court nevertheless held that, notwithstanding plaintiff's "failure to establish a legally protectable trade secret," the district court should not have dismissed plaintiff's common law unfair competition claim.  *Id.* at 1169.  In reaching this conclusion, the Court reasoned that "[u]nder California law a plaintiff can maintain a common law unfair competition claim regardless of whether it demonstrates a legally protectable trade secret."  *Id.*

Similarly, in *City Solutions, Inc. v. Clear Channel Communications*, the Court upheld a jury verdict finding in plaintiff's favor on a common-law unfair competition claim based on defendant's misappropriation of plaintiff's "confidential and proprietary business strategy" concerning a citywide news rack project.  *City Solutions*, 365 F.3d 835, 842 (9th Cir. 2004).  In upholding the jury's verdict, the *City Solutions* Court held that "common law misappropriation is one of a number

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12

of doctrines subsumed under the umbrella of unfair competition" that may be "invoked… to protect

something of value not otherwise covered by patent or copyright law, [or] trade secret law…." *Id.*

To the extent *Imax* and *City Solutions* are in conflict with the holding in *Silvaco*, the Court

concludes that they should not be followed.  As an initial matter, both *Imax* and *City Solutions*

predate *Silvaco*.  *See Silvaco*, 184 Cal. App. 4th 210 (2010); *City Solutions*, 365 F.3d 835 (2004);

*Imax,* 152 F.3d 1161 (1998).  While, the Ninth Circuit's decisions on questions of state law are

ordinarily binding on this court, where, as here, there has been "subsequent indication from the

California courts that [the Ninth Circuit's] interpretation was incorrect," the Court may follow the

California Courts.  *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 969 (N.D.

Cal. 2008) (quoting *Owen By & Through Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir.

1983)).  Here, since *Imax* and *City Solutions* were decided, the California Court of Appeal has

"emphatically reject[ed]" the proposition that the UTSA "was not intended to preempt common

law conversion claims based on the taking of information that, though not a trade secret, was

nonetheless of value to the claimant."  *Silvaco*, 184 Cal. App. 4th at 239 n. 22.  Thus, the Court

concludes that *City Solutions* and *Imax* should not be followed to the extent they suggest that

SunPower may bring a claim based on confidential or proprietary information that does not satisfy

the definition of trade secret.  *See Silicon Image, Inc.*, 642 F. Supp. 2d at 969 (holding that because

"several California appellate courts have rejected the Ninth Circuit's interpretation of California

law and the Court finds no California case in which the federal courts' interpretation of California

law has been approved, the Court… must follow the more recent California cases on the question

of extrinsic evidence"); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1136 n.

93 (C.D. Cal. 2003) ("[E]ven if the court were to read *Grosvenor* as broadly as Leider contends,

*Grosvenor* was decided in 1990.  This was long before the California Courts of Appeal decided

*Fiol* and *Saunders.* To the extent *Grosvenor* is inconsistent with these courts' interpretation of state

law, the court concludes that it must follow the decisions of the California courts." (citing *Pershing

Park Villas Homeowners Ass'n. v. United Pacific Ins. Co.,* 219 F.3d 895, 903 (9th Cir.2000))).

Moreover, neither *Imax* nor *City Solutions* even explicitly considered the question of

supersession.  Accordingly, the Court concludes that they should not be applied in the supersession

13

context.  *See Digital Envoy, Inc. v. Google Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) ("Moreover, as acknowledged in the *Postx* decision, the Ninth Circuit did not address the preemption issue in *City Solutions*.… As a result, the Court finds that California's statute, as persuasively interpreted in *Callaway,* preempts Digital's claims for unfair competition and unjust enrichment." (internal citations omitted)).[6]

In light of *Silvaco*, the Court concludes that SunPower's claims based on its non-trade secret proprietary information are superseded unless one of the following conditions is met: (1) SunPower can allege facts that show that "the [non-trade secret proprietary] information… was 'made property by some provision of positive law,'… on grounds that are qualitatively different from the grounds upon which trade secrets are considered property" (*Bryant v. Mattel, Inc.*, CV 04-9049 DOC RNBX, 2010 WL 3705668, at *22 (C.D. Cal. Aug. 2, 2010) (quoting *Silvaco,* 184 Cal.App.4th at 239 n. 22)), or (2) it can otherwise be concluded that SunPower's Non-Trade Secret Claims allege "wrongdoing" that is "material[ly] distinct[] [from] the wrongdoing alleged in a [C]UTSA claim...."  (*Convolve, Inc.*, 2006 WL 839022 at *6) (internal quotations omitted) (applying the nucleus of facts test). The Court addresses each of these issues in turn.

### 3. SunPower Has Not Alleged Facts Sufficient to Show That SunPower Has a Property Interest in its Non-Trade Secret Proprietary Information

Having reviewed the Complaint, the Court concludes that, notwithstanding SunPower's labeling of its non-trade secret information as "proprietary" (*see e.g.* Compl. ¶ 120), SunPower has failed to allege facts sufficient to show that SunPower has property rights in its non-trade secret information.

As an initial matter, SunPower never actually defines the term "non-trade secret proprietary information."  *Id*. ¶¶ 120, 121, 122, 123, 126, 132, 134, 142, 149, 154.  Indeed, the term does not appear anywhere in the section of SunPower's Complaint setting forth SunPower's factual allegations regarding Defendants' alleged misconduct.  *See id.* ¶¶ 12-55.  The term does not make

---

[6] *But see Postx Corp. v. Secure Data in Motion, Inc.*, C 02-04483 SI, 2004 WL 2663518, at *3 (N.D. Cal. Nov. 20, 2004) (noting that "the preemption question… was not before the" Court in *City Solutions*, but nevertheless concluding that "*City Solutions* strongly suggests that a plaintiff may still allege trade secrets misappropriation and unfair competition as alternative theories of liability")

Case No.: 12-CV-00694-LHK
ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

its first appearance until the portions of SunPower's Complaint setting forth its specific causes of action. *See id.* ¶¶ 120, 121, 122, 123, 126, 132, 134, 142, 149, 154. No information is provided in these sections regarding what information SunPower contends constitutes non-trade secret proprietary information. Given the dearth of information concerning the nature of SunPower's non-trade secret proprietary information, the Court cannot conclude that this information is made property by virtue of some law other than CUTSA.

The Court also notes that, in the section of SunPower's Complaint setting forth its factual allegations regarding Defendants' alleged misconduct, SunPower uses the terms "confidential information" and "non-confidential proprietary information." *Id.* ¶¶ 34, 36, 41, 43, 45, 48, 49, 50, 51. While SunPower makes a facial distinction between these two categories, SunPower uses both terms to refer to the same computer files. *See e.g.* ¶ 34 (alleging that Defendants stole "tens-of-thousands of computer files containing [SunPower] confidential information and non-confidential proprietary information… [and that these] files included… quotes, deals, proposals, contracts, and files containing forecast analysis, market analysis, business analysis and information downloaded" from SunPower's sales website); *id.* ¶ 36 (alleging that Leyden "copied at least thousands of files containing [SunPower] confidential information and non-confidential proprietary information… include[ing] hundreds of quotes, proposals, and contracts, as well as files containing market analysis, forecast analysis, and business analysis"); *id.* ¶ 41 (alleging that Leary "copied at least tens-of-thousands of files containing [SunPower] confidential information and non-confidential proprietary information… [including] over 40,000 quotes, contracts, proposals and deals…" etc…).

SunPower's use of the terms "confidential information" and "non-confidential proprietary information" to refer to the same data without making any effort to assign particular data to particular categories suggests that the distinction SunPower is drawing is superficial. To the extent SunPower uses the terms "confidential information" and "non-confidential proprietary information" as proxies for the terms "trade secret information" and "non-trade secret proprietary information," the Court concludes that the distinction SunPower draws between the latter two categories of information is likely superficial as well. Thus, the Complaint supports the conclusion that any property interest SunPower may have in its non-trade secret proprietary information is

15

United States District Court
For the Northern District of California

1  qualitatively no different from the grounds upon which its trade secrets are considered property.

2  Accordingly, the Court cannot conclude from these facts that SunPower has a property interest in

3  the non-trade secret proprietary information or that this property interest is sufficiently distinct

4  from its interest in its trade secrets such that its Non-Trade Secret Claims are not superseded.

5  Notwithstanding SunPower's failure to allege what information constitutes non-trade secret

6  proprietary information, in its Opposition, SunPower argues that "California law clearly recognizes

7  a property right in" its non-trade secret.  Opposition at 8.  Accordingly, SunPower contends that its

8  Non-Trade Secret Claims should not be superseded.  The Court is not persuaded.  SunPower fails

9  to support its arguments with any case law recognizing a broad property right in non-trade secret

10 proprietary information.  SunPower does cite to several cases, in which Courts allowed claims for

11 conversion, trespass to chattels, and common law unfair competition to proceed based on the

12 misappropriation of intangible property, but these cases fail to support the conclusion that the non-

13 trade secret proprietary information at issue here is property.

14 For example, SunPower cites the Ninth Circuit's decision in *Kremen v. Cohen*, 337 F.3d

15 1024 (9th Cir. 2003)).  Opposition at 8.  In *Kremen*, after applying a three-part test, the Court

16 concluded that the owner of a website domain name had a property right in the domain name and

17 could therefore pursue a claim for conversion based on the Defendant's sale of the domain name to

18 another party.  *Id.* at 1030 (concluding that plaintiff "had an intangible property right in his domain

19 name"); *see also id.* ("We apply a three-part test to determine whether a property right exists:

20 'First, there must be an interest capable of precise definition; second, it must be capable of

21 exclusive possession or control; and third, the putative owner must have established a legitimate

22 claim to exclusivity.'" (quoting *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.,* 958

23 F.2d 896, 906 (9th Cir.1992)).  *Kremen*'s recognition that plaintiff had a property right in the

24 domain name does not support the broad proposition that "California law… recognizes a property

25 right in" non-trade secret information.  Opposition at 8.

26 Moreover, *Kremen's* conclusion that the domain name was property was based in part on its

27 finding that the plaintiff had a "legitimate claim to exclusivity" as to the domain name.  *Kremen*,

28 337 F.3d at 1030 (holding that plaintiff had an exclusive claim to the domain name and likening

16

"[r]egistering a domain name… [to] staking a claim to a plot of land at the title office"). Here, one of the issues with SunPower's Non-Trade Secret Claims is that SunPower has failed to provide sufficient information for the Court to conclude that: (1) SunPower has a "legitimate claim to exclusivity" in the non-trade secret information, and (2) SunPower's basis for claiming an exclusive right to such information is different from the grounds upon which the information might be deemed a trade secret under CUTSA.

SunPower also cites *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (1996)). Opposition at 9. *Thrifty-Tel* held that a jury could have properly found defendants guilty of trespass to a chattel where defendants "employed computer technology in their efforts to crack plaintiff's access and authorization codes and make long distance phone calls without paying for them…" 46 Cal. App. 4th at 1563. Again, *Thrifty-Tel* does not stand for the broad proposition that SunPower has a property interest in all non-trade secret proprietary information. The holding in *Thrifty-Tell* might be read as acknowledging that plaintiff had some property rights with respect to the "confidential codes" used to gain access to plaintiff's computer systems. *See id.*1565-66 (holding that the jury could have found defendants liable for trespass to a chattel based on defendants' "unauthorized *use* of personal property" where defendants used "intangible computer access codes" to make long-distance calls (emphasis in original)). However, to the extent the opinion in *Thrifty-Tell* suggests that plaintiff had a property interest in the access codes, this property interest was based on the codes "confidential" nature (*id.* at 1565); thus, the relevant property interest was qualitatively the same as an individual's interest in trade secret information. As set forth in *Silvaco*, a claim based on the misappropriation of confidential information would certainly be superseded by CUTSA. *See Silvaco*, 184 Cal. App. 4th at 239 n. 22. Significantly, *Thrifty-Tell* was decided in 1996, fourteen years before *Silvaco*, and the *Thrifty-Tell* Court never considered CUTSA or whether plaintiff's claims were superseded by CUTSA.

Likewise, SunPower's citations to *City Solutions* and *Imax* are also unavailing. Opposition at 10. In *Imax* and *City Solutions*, the Ninth Circuit held that the plaintiffs in those cases could proceed on theories of common law misappropriation, notwithstanding the fact that they were unable to prevail on their trade secret claims. *Imax*, 152 F.3d at 1169; *City Solutions*, 365 F.3d at

17

**United States District Court**
For the Northern District of California

842. One of the elements of a common-law misappropriation claim is that SunPower has "invested substantial time and money in [the] development of its property." *Imax*, 152 F.3d at 1169. It could be argued that the doctrine of common law misappropriation therefore establishes a property right of sorts in the information that a party has "invested substantial time and money in" developing. *Id.* However, SunPower has not alleged any facts regarding what the non-trade secret information is, much less facts showing SunPower invested substantial time and money in developing this information. Thus, even assuming a common law misappropriation claim could be maintained (*i.e.* that such a claim is not superseded by CUTSA), SunPower's claim would fail. Moreover, even if SunPower had alleged such facts *and* the Court were to accept the proposition that, pursuant to the doctrine of common law misappropriation, SunPower may have a property interest in information that Plaintiff "invested substantial time and money" in developing (*id.*), SunPower has failed to identify any case concluding that this property right may support anything other than a common law misappropriation claim (which Plaintiff has not alleged). Thus, Plaintiff's Non-Trade Secret Claims (which allege conversion, trespass to chattels, etc…) would still fail.[7]

### 4. The Wrongdoing Alleged in SunPower's Non-Trade Secret Claims Is Not Different from the Wrongdoing Alleged in SunPower's Trade Secret Claim

SunPower also argues that its Non-Trade Secret Claims are not preempted because they "require[] additional facts and legal requirements apart from the misappropriation of trade secrets" and are therefore based on a different nucleus of fact than SunPower's Non-Trade Secret Claims. Opposition at 6. The Court disagrees. As set forth above, the nucleus of fact test does not focus on whether a non-CUTSA claim requires the pleading of different elements than the CUTSA claim, but rather on whether "there is [a] material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in [the non-CUTSA] claim…." *Convolve*, 2006 WL 839022 at

---

[7] Notably, in *City Solutions*, part of the reason why the court concluded the information at issue had value was that it was "confidential." *City Solutions*, 365 F.3d at 843 (holding that "the jury could have reasonably inferred" that defendant was guilty of common law misappropriation because it used plaintiff's "confidential bidding strategies" which plaintiff "invested substantial time and skill" in developing). Thus, the property right at issue in that case appears to have been qualitatively the same as the property rights established by CUTSA. *See* Cal. Civ. Code § 3426.1(d) (stating that trade secrets "[d]erive[] [their]… value… from not being generally known to the public").

18

*6; *see also Mattel, Inc.*, 782 F. Supp. 2d at 986 (explaining that, under California law, a claim may be superseded by CUTSA regardless of whether it "require[s] proof of 'additional elements'" (citing *K.C. Multimedia*, 171 Cal.App.4th at 960)).  Here, the Court concludes that there is no material difference between the wrongdoing alleged in support of SunPower's Trade Secret Claim and the wrongdoing alleged in support of SunPower's Non Trade Secret Claims.

As an initial matter, the Court notes that SunPower's Non Trade Secret Claims incorporate the same factual allegations regarding Defendants' unauthorized access and use of SunPower's information as SunPower's Trade Secret Claim.  *See* Compl. ¶¶ 12-55 (alleging facts regarding Defendants' misappropriation of SunPower's information); *id.* ¶ 63 (incorporating paragraphs 1-62 into SunPower's trade secret claim); *id.* ¶ 118 (incorporating paragraphs 1-117 into SunPower's breach of confidence claim); *id.* ¶ 125 (incorporating paragraphs 1-124 into SunPower's conversion claim); *id.* ¶ 131 (incorporating paragraphs 1-131 into SunPower's trespass to chattels claim); *id.* ¶ 138 (incorporating paragraphs 1-137 into SunPower's interference with prospective business advantage by defendants); *id.* ¶ 146 (incorporating paragraphs 1-145 into SunPower's common law unfair competition claim); *id.* ¶ 152 (incorporating paragraphs 1-151 into SunPower's statutory unfair competition claim).

Furthermore, while stated in various ways, each of SunPower's Non-Trade Secret Claims alleges in essence that Defendants violated SunPower's rights by acquiring, disclosing, and/or using, without consent (*i.e.* misappropriating[8]) SunPower's proprietary information.  *See id.* ¶ 120-22 (alleging that SunPower "disclosed its non-trade secret proprietary information" to Defendants Leyden, Leary, Aguayo, Giannini, and Catchart in confidence, and that these Defendants breached their confidence to SunPower by "disclos[ing] to others [SunPower's] non-trade secret proprietary information"); *id.* ¶ 127 (alleging that Defendants were liable for conversion because they "interfered with [SunPower's] ownership and possessory rights" in SunPower's non-trade secret proprietary information and that Defendants have "exercis[ed] those rights as though they were"

---

[8] *See* Cal. Civ. Code § 3426.1 ("Misappropriation" means: (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent….").

19

Case No.: 12-CV-00694-LHK
ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

United States District Court
For the Northern District of California

1   Defendants' own); *id.* ¶¶ 133-134 (alleging that Defendants were liable for trespass to chattels

2   because they "interfered with [SunPower's] ownership and/or possessory rights" in SunPower's

3   non-trade secret proprietary information and "deprived [SunPower] of its ability to exclusively

4   use" this information); *id.* ¶ 140-41 (alleging, in connection with interference with prospective

5   business advantage claim, that Individual Defendants "worked for [SunPower] and obtained

6   [SunPower's] customer information during employment and[,] []after beg[inning] [to] work[] for

7   [Solarcity], [began] to use [SunPower's] customer information" to "convert [SunPower's]

8   customers to their own"); *id.* ¶ 149 (alleging that Defendants were liable for common-law unfair

9   competition because they "st[ole] [SunPower's] non-trade secret proprietary information, [and]

10  us[ed] [it] for [Defendants'] own purposes");  *id.* ¶ 154 (alleging that Defendants violated

11  California Business and Professions Code section 17200 by "stealing [SunPower's] non-trade

12  secret proprietary information" and "using [it] for [Defendants'] own purposes").  Accordingly, the

13  Court concludes that the wrongdoing alleged in connection with each of the Non-Trade Secret

14  Claims is in essence the same wrongdoing as was alleged in connection with SunPower's Trade

15  Secret Claim.  The Non-Trade Secret Claims are therefore supersedeed.  *See e.g. K.C. Multimedia,*

16  *Inc.*, 171 Cal. App. 4th at 960-62 (concluding that plaintiff's breach of confidence, interference

17  with contract, and statutory unfair competition claims were supersedeed because they "rest[ed]

18  squarely on [plaintiff's] factual allegations of trade secret misappropriation").

19            **5.      Supersession is Properly Decided on a Motion to Dismiss**

20            SunPower argues that it would be "premature" to address the question of supersession at the

21  motion to dismiss stage.  Opposition at 12.  SunPower argues that the Court is required to accept

22  SunPower's factual allegations as true at the motion to dismiss stage.  *Id.*  (citing *Thompson v.*

23  *Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th

24  Cir. 1996)).  SunPower argues that its factual allegations establish that its Non-Trade Secret Claims

25  are based "only on non-trade secret intangible information" and that "California law recognizes a

26  property right in such information…."  *Id.* Accordingly, SunPower argues that the "Court should

27  decline to reach the question of preemption until it can be determined whether the stolen

28  information fits under this definition."  *Id.*

20

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SunPower further argues that several courts facing similar allegations declined to resolve the issue of preemption at the motion to dismiss stage.  *See id.* (citing e.g. *Bryant*, 2010 WL 3705668 at *22 (holding that the question of whether the "information alleged to have [been] converted was 'made property by some provision of positive law,'… qualitatively" different than CUTSA should be reserved for summary judgment or trial because "[r]esolving this question requires analysis of the facts: namely, what the confidential or proprietary information is, how it was converted, and the property interest alleged to have [been] harmed as a result of that conversion"); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,* 295 F.Supp.2d 430, 437 (D. Del. 2003) ("[U]ntil it is shown that the information is entitled to trade secret protection, it is premature to rule whether Dunlop's claims of conversion, unjust enrichment, patent title and negligence are preempted under CUTSA.")).

Notwithstanding the decisions of the district courts cited above, the Court concludes that, in this case, the issue of whether SunPower's claims are superseded by CUTSA can and should be determined on a motion to dismiss.  As an initial matter, at least one other district court within this district has determined whether claims are superseded by CUTSA at the motion to dismiss stage. *See Heller*, 2012 WL 13572 at *7 (granting "Cepia's motion to dimiss Heller's common law claims" based on the "the wrongful taking and use of confidential business and proprietary information, regardless of whether such information constitutes trade secrets").

Moreover, in certain cases like the present where a plaintiff includes only vague allegations regarding the nature of purportedly non-trade secret proprietary information, the Court thinks a determination of whether SunPower's claims are superseded by CUTSA is appropriate in light of Rule 8.  As explained in *Twombly* and *Iqbal*, in order to satisfy Rule 8, a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Notably, several of the decisions SunPower cites predate *Twombly* and *Iqbal*, which were decided in 2007 and 2009 respectively.  *See* Opposition at 12 (citing *Genzyme Corp.*, 463 F.Supp.2d 949 (W.D. Wisc. 2006); *Callaway*, 295 F.Supp.2d at 437; *Stone*

21

Case No.: 12-CV-00694-LHK
ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

*Castle Fin.,* 191 F.Supp.2d 652, 658–659 (E.D. Va. 2002); *Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.,* 985 F.Supp. 827, 830 (N.D. Ill. 1997)).

Here, SunPower's Non-Trade Secret Claims are based on SunPower's non-trade secret proprietary information.  In order for SunPower to prevail on its claims based on the misappropriation of this information, SunPower must show that it actually had a property interest in its non-trade secret proprietary information by virtue of some "positive law," and that that interest is qualitatively different from any property interest conferred by CUTSA.  *Silvaco*, 184 Cal. App. 4th at 239 n. 22.  Absent such a showing, the Court cannot draw a "reasonable inference" that SunPower is entitled to relief on its claims for breach of confidence, conversion, trespass to chattels, interference with prospective business advantage, unfair competition, or statutory unfair competition.  As set forth above in section IV(A)(3), SunPower has failed to allege facts sufficient for the Court to conclude that SunPower had a property interest in the non-trade secret information, or that this interest is qualitatively different from the rights conferred by CUTSA.  Accordingly, rather than postpone this issue until summary judgment, the Court finds it appropriate to dismiss SunPower's claims now.  *See Heller*, 2012 WL 13572 at *7 (granting motion to dismiss where plaintiff failed to "identif[y] any law that confers property rights on his non-trade secret confidential information" (citing *Silvaco,* 184 Cal.App.4th at 236)).  However, as will be discussed in Section V, the Court will grant leave to amend.[9]

### B.   SunPower's Interference with Prospective Business Advantage Claim Fails for Other Reasons

Defendants argue that, in addition to the preemption issues discussed above, SunPower's seventh cause of action for interference with a prospective economic advantage fails because SunPower has not alleged specific facts regarding with which customer relationship Defendants' conduct interfered, but has instead alleged that SunPower "ha[d] an 'economic relationship' with 'many customers,' and that Defendants' actions disrupted such relationships."  Motion at 18 (citing

---

[9] Defendants argue that, in addition to the supersession issues discussed above, SunPower's Non-Trade Secret Claims fail because California law has never recognized causes of action for conversion, trespass to chattels, tortious interference with prospective economic advantage, common law unfair competition, or statutory unfair competition based on the misappropriation of intangible non-trade secret proprietary information.  *See* Motion at 3-6.  In light of the Court's conclusions that the Non-Trade Secret Claims are superseded, the Court need not resolve this issue.

Case No.: 12-CV-00694-LHK
ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

United States District Court
For the Northern District of California

1    Compl. ¶¶ 138-45).  Defendants argue that such allegations will not suffice because SunPower is

2    not permitted to allege that there was "interference that generally caused harm in the marketplace,

3    without naming any interfered-with third party."  *Id.* (citing *Westside Center Assoc. v. Safeway*

4    *Stores 23, Inc.*, 42 Cal. App. 4th 507, 527-28 (1996) (interference claim insufficient where

5    potential market alleged as lost relationships; rejecting 'interference with the market' theory)).

6    SunPower argues that Defendants should not be permitted to claim "that they do not know who

7    these customers are because they *stole* SunPower's customer information…."  Opposition at 13.

8            The Court agrees with Defendants.  SunPower has not identified any specific customer

9    relationship with which SolarCity interfered, nor alleged any facts regarding how SolarCity

10   interfered with those customer relationships (beyond allegations that SolarCity misappropriated

11   proprietary information regarding SunPower's customers, allegations which, as discussed above,

12   are superseded by CUTSA).  *See Westside Center Assoc.*, 42 Cal. App. 4th at 527-28 (holding that

13   plaintiff's intentional interference with prospective economic advantage claim failed where

14   plaintiff failed to identify "an existing relationship with an identifiable buyer" or to specify the

15   "factual basis upon which to determine whether the plaintiff was likely to have actually received

16   the expected benefit").  Accordingly SunPower's interference with prospectie business advantage

17   claim is dismissed.

18   **V.       LEAVE TO AMEND UNDER RULE 15(A)**

19           Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

20   given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate a

21   decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith,* 203 F.3d

22   1122, 1127 (9th Cir.2000) (en banc) (internal quotation marks and alterations omitted).  When

23   dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend

24   even if no request to amend the pleading was made, unless it determines that the pleading could not

25   possibly be cured by the allegation of other facts.'"  *Id.* at 1130 (quoting *Doe v. United States,* 58

26   F.3d 494, 497 (9th Cir.1995)).  Generally, leave to amend shall be denied only if allowing

27   amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

28

23

1    moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 532

2    (9th Cir.2008).

3         Here, SunPower has failed to allege facts showing that: (1) SunPower's non-trade secret

4    proprietary information is made property by some law other than CUTSA, or (2) SunPower's Non-

5    Trade Secret Claims are predicated on something other than the misappropriation of information of

6    value.  The Court believes SunPower may be able to amend its complaint to include allegations

7    showing SunPower has some property interest in the purported non-trade secret information, or that

8    SunPower's Non-Trade Secret Claims are premised on something other than the misappropriation

9    of information of value such that they are not superseded.  Accordingly, the Court grants leave to

10   amend.  *See Lopez,* 203 F.3d at 1127 (holding that leave to amend "shall be freely given when

11   justice so requires").

12   **VI.      CONCLUSION**

13        For the foregoing reasons, Defendants' Partial Motion to Dismiss is GRANTED, with leave

14   to amend, as to SunPower's: (1) fourth cause of action for breach of confidence (*see id.* ¶¶ 118-

15   124), (2) fifth cause of action for conversion (*see id.* ¶¶ 125-130), (3) sixth cause of action for

16   trespass to chattels (*see id.* ¶¶ 131-137), (4) seventh cause of action for tortious interference with

17   prospective economic advantage (*see id.* ¶¶ 138-145); (5) eighth cause of action for common law

18   unfair competition (*see id.* ¶¶ 146-151); and (6) ninth cause of action for unfair competition under

19   California Business & Professions Code section 17200 (*id.* ¶¶ 152-155).  SunPower may file an

20   amended complaint addressing the deficiencies identified herein, within 21 days of this Order.

21   SunPower may not add new claims or parties without seeking Defendants' consent or leave of the

22   Court pursuant to Federal Rule of Civil Procedure 15.  If SunPower fails to file an amended

23   complaint within 21 days of this Order or to cure the deficiencies addressed in this Order, these

24   claims will be dismissed with prejudice.

25   **IT IS SO ORDERED.**

26

27   Dated: December 11, 2012                    _____

28                                               LUCY H. KOH
                                                 United States District Judge

24